John F. Tyrrell v. Commissioner.
Tyrrell v. Commissioner
Docket No. 55329.
United States Tax Court
T.C. Memo 1956-38; 1956 Tax Ct. Memo LEXIS 258; 15 T.C.M. (CCH) 173; T.C.M. (RIA) 56038; February 21, 1956
*258 Daniel D. Glasser, Esq., for the petitioner. Paul Levin, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $1,922.24 in income tax for the year 1948. Petitioner contends that in the determination of his income for 1948 respondent erred in disallowing a loss resulting from a real estate transaction in that year. The nature of the transaction will appear from our findings of fact. Petitioner claims a refund of tax paid. Findings of Fact Petitioner is an individual residing in Oak Park, Illinois. He filed his income tax return for 1948 with the collector of internal revenue for the first district of Illinois. Petitioner is an attorney at law and has been engaged in practice for approximately fifty years in Chicago, Illinois. In 1948 he was also employed by Geo. G. Renneker Company. Over the years petitioner engaged in a number of transactions involving the purchase and sale of real estate on his own account and also represented others. In December 1925, petitioner, Ted Bourke and James M. Ragen entered into an agreement to purchase a subdivision including some 148 lots at 83rd Street and Kedzie *259 Avenue in Chicago. Each of the three agreed to advance and pay one-third of all monies necessary to make the purchase and to share in all profits equally, if and when received. Petitioner advanced at least $13,544.39 pursuant to the agreement. The other members of the syndicate advanced a larger total. Title to the property was taken in the name of Ragen and before 1948 no transfer of record appears by or to petitioner. Sometime prior to 1948 petitioner, in order to keep his fellow members of the syndicate interested, agreed to forego any profit till they had been repaid their own investments out of any proceeds of sale. Efforts to sell the lots before 1948 were fruitless. Petitioner participated in such efforts as were made and, at least in 1934, there was a sign on the property advertising the lots for sale by "John Tyrrell, Owner." In the latter part of 1947 or early in 1948 George Lawson opened negotiations with petitioner to purchase the properties. Lawson dealt with petitioner as one having an interest in the property for sale. In the meantime both Bourke and Ragen had died and record title to 110 of the lots stood in the name of Alice R. Bourke, Bourke's widow. The record *260 title to the remaining lots apparently stood in the name of Mico Corporation. The evidence does not disclose the exact nature of the transfers which brought about this state of the record title. On September 8, 1948, petitioner executed a quitclaim deed conveying and quitclaiming to Alice R. Bourke, widow of Ted Bourke, all his interest in the lots to which she had title. Petitioner received no consideration for the deed. This quitclaim was required by the title company which was examining the title for the parties in order to clear the title. On October 24, 1948, petitioner wrote the following letter to Alice R. Bourke: "Dear Mrs. Bourke: "Heretofore, as you know, Ted, Jim Ragen and myself, as a syndicate, as partners jointly, bought the property commonly known among us as "the 148 lots", which were located in the general vicinity of 83rd-85th Streets and Kedzie Avenue, westward. "When the financial burden got too heavy, after we met several disappointments in the sale of these lots, I transferred and waived my one-third interest to Ted and Jim, subject to participating in any profit over our original investment, and then only after any advancements by Ted or Jim on my share, *261 or by myself for taxes, special assessments and expenses had been also credited to them, or either of them, subject only to my attorney's fees for services rendered to the syndicate, none of which have been paid. "Subsequently, Ted and Jim, with my approval, redivided the lots, Jim taking mostly Kedzie Avenue frontage, etc., and fewer lots than otherwise, and also due to Ted's majority subsequent investment. "After many failures, you have now an opportunity to sell these lots, but, of course, at a tremendous loss, and in accordance with my letter, I also will take a very substantial loss when all the lots are sold, etc. "Therefore, to fully protect you, so far as any claim on my part is concerned, I hereby transfer, sell and assign to you any and all interest I have or may have had in the syndicate that purchased these 148 lots, or any part thereof that is vested in and sold by you. I will do likewise with Ragen's interest. "My interest not being a matter of record so far as I know, this letter further is your authority also to dispose of any right, title or interest that I have or may have had in these lots, shown, sketched, or set forth in any letters, agreements, contracts *262 or writings, and I further assure you that if required, I will execute any proper document, deed or conveyance hereafter that may be required, or to complete your sale now pending. "Wishing you success in concluding this unfortunate venture, and again assuring you of my continued willingness to fully cooperate in this matter, I am "Yours very truly, "CC to James M. Ragen, Jr." Pursuant to the negotiations between petitioner and Lawson an agreement was reached in 1948 pursuant to which Lawson purchased all the lots for $110 or $115 per lot. On his 1948 income tax return petitioner wrote the following under "Miscellaneous" - Loss 1/3 interest 147 lots in syndicate
13,544.39
with, Ted Bourke and Jim Ragen
my portion transfered to
avoid further liability or loss Oct.
24, 1948
1/2 6,772.20 Respondent disallowed the claimed loss and on the statement accompanying the deficiency notice it was explained that the item had been disallowed because it had not been established that the loss had occurred in 1948 so as to constitute a deduction under any provision of the Internal Revenue Code and further because the basis of petitioner's investment in the syndicate *263 had not been fully substantiated. Ultimate Findings The lots involved were purchased for resale and petitioner held his interest therein primarily for resale to customers in the ordinary course of his trade or business. Petitioner suffered an ordinary loss in 1948 of at least $13,544.39. Opinion TIETJENS, Judge: The questions for decision are predominantly fact questions and our findings dispose of the issues. On brief, respondent makes four contentions: (1) that petitioner had no interest in the property in 1948 (2) that if it is held that petitioner had an interest in the property, then, that he made a gift of that interest to Alice R. Bourke in 1948 which gave rise to no loss on his part (3) that no basis for the property has been established and (4) that petitioner did not hold the lots for sale to customers in the ordinary course of his trade or business. While the evidence of record is not as clear and decisive as it might have been, we think it adequately supports our findings - findings which dispose of the controversy in a manner adverse to respondent's contentions. We have no doubt that petitioner acquired an interest in the properties (though not one of record) *264 at the time of original purchase. This interest was never abandoned nor disposed of until 1948 when the lots were about to be sold at a price which made certain he could get back none of his original investment. As far as petitioner is concerned his quitclaim deed to Bourke's widow in 1948 coupled with the circumstances under which the deed was given, made the transaction a "completed" one in that year. That he was a lawyer by profession and also an employee of another corporation in 1948 is unimportant. It was not necessary for him to have been in the real estate business completely to entitle him to the deduction. Cf. Neils Schultz, 44 B.T.A. 146. Our findings show the amount of the loss to be at least the amount claimed by petitioner and there is no evidence to show that petitioner made a gift of his interest to Bourke's widow. Decision will be entered under Rule 50.